**WESSELY ENERGY CORPORATION,**
**Plaintiff,**

v.

**ARKANSAS LOUISIANA GAS COMPA-**
**NY and the Federal Power**
**Commission, Defendants.**

**No. CIV–77–0159–B.**

United States District Court,
W. D. Oklahoma.

July 29, 1977.

Phillip D. Hart, Terry R. Barrett and Stanley L. Cunningham of McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., and Robert M. Martin, Jr., Dallas, Tex., for plaintiff.

James A. Peabody of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., and W. Michael Adams of Blanchard, Walker, O'Quin·& Roberts, Shreveport, La., for defendant Arkansas Louisiana Gas Co.

Thomas M. Walsh, Washington, D. C., for defendant Federal Power Commission.

## MEMORANDUM OPINION

BOHANON, District Judge.

On July 5, 1977, this cause came before the Court in a hearing on plaintiff's Motion for Summary Judgment. Arkansas Louisiana Gas Company (Arkla) and the Federal Power Commission (FPC) had previously

filed Motions to Dismiss the Action, alleging that primary jurisdiction was vested in the FPC, and further alleging Wessely's failure to exhaust its administrative remedies with the FPC. These Motions had been denied.

Having determined that no genuine issue exists as to any material fact and that plaintiff is entitled to judgment as a matter of law, summary judgment is hereby granted.

An examination of the pleadings, affidavits, supporting documents and other material reveals the following facts as uncontroverted and material:

1. On or about June 29, 1971, Wayne A. Ivins, fee owner of the Southeast Quarter of Section 24, Township 16 North, Range 13 West, Blaine County, Oklahoma, together with his wife, Christina Laverne Ivins, as lessors, executed an oil and gas lease covering said quarter section of land, and said quarter section only, in favor of W. M. Bryan, as lessee. Said lease provided that it shall remain in force for a term of five years from June 29, 1971, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

2. On or about October 22, 1971, Aquitaine Oil Corporation (Aquitaine) and Arkla entered into a Gas Purchase Contract under which Aquitaine agreed to sell to Arkla natural gas production from all wells then or thereafter completed as commercially productive of natural gas on lands within a specified area, which area covered in excess of one million (1,000,000) acres, and included the entire township within which the quarter section of land owned by Wayne A. Ivins, described above, was situated.

3. At the time of execution of said contract, Aquitaine was the holder of a Small Producer Certificate issued to it by the FPC on September 15, 1971 in Docket No. CS 71-279.

4. On December 27, 1971, a Recording Supplement Gas Purchase Contract dated December 3, 1971, was recorded in the public records of Blaine County, Oklahoma, at Book 185, pages 397-399, in which Aquitaine gave public notice of the Gas Purchase Contract.

5. On or about December 6, 1973, Aquitaine became the record owner of an undivided one half of the lessee interest under oil and gas lease described in numbered paragraph 1 above (hereinafter referred to as the Aquitaine Lease).

6. The Aquitaine Lease expired at the end of its primary term on June 29, 1976, without production of oil, gas or other minerals ever having been obtained thereunder, and the Aquitaine Lease has been released of record. No oil, gas or other minerals have ever been produced from said quarter section of land, nor from other lands covered by an oil and gas lease also covering said quarter section, nor from any reservoir underlying said quarter section.

7. Natural gas has been produced by Aquitaine and delivered to Arkla for resale in interstate commerce pursuant to their above described Gas Purchase Contract from other tracts of land under other oil and gas leases not here involved, with such deliveries having commenced July 6, 1972.

8. On or about May 27, 1976, Wayne A. Ivins, together with his wife Christina Laverne Ivins, as lessors, executed an oil and gas lease covering said quarter section of land in favor of Fred R. Hirzel, Jr., as lessee. Said lease provides for a primary term of three years commencing June 30, 1976, being the day following the day on which the Aquitaine Lease expired, and constitutes a valid and subsisting lease covering the full mineral interest in said quarter section. On or about June 4, 1976, by assignment from Fred R. Hirzel, Jr., plaintiff herein, Wessely Energy Corporation (Wessely), became, and at all times thereafter has been, the owner of the oil and gas leasehold estate created by said lease (hereinafter referred to as the Wessely Lease). Unless production of oil, gas or other minerals is achieved under said leasehold estate by Wessely, on or before June 30, 1979, said lease will expire.

9. Wessely is not affiliated with Aquitaine in any respect, and there is no business relationship or other relationship of

any kind or character between Wessely and Aquitaine.

10. Wessely has never contracted with Arkla with respect to the oil and gas leasehold estate created by the Wessely Lease.

11. Plaintiff, Wessely, asserts that it is not committed to sell any natural gas production from the said Southeast Quarter of Section 24, Township 16 North, Range 13 West, Blaine County, Oklahoma to the defendant, Arkla, and further that any gas producible from the leasehold estate owned by plaintiff covering said quarter section is not dedicated to delivery in interstate commerce. Plaintiff asserts that this Court has jurisdiction and that a controversy cognizable under the Federal Declaratory Judgment Act exists.

12. Arkla has asserted that any natural gas produced from said quarter section pursuant to the Wessely Lease must be sold by Wessely to Arkla for resale in interstate commerce, pursuant to the above described Gas Purchase Contract between Aquitaine and Arkla.

13. The FPC denies that Wessely is entitled to sell any natural gas producible from its leasehold estate covering said quarter section free of any dedication to interstate commerce and free from any obligation to sell such natural gas to Arkla.

14. Wessely is a Texas corporation whose principal place of business is situated in Texas, and Arkla is a Delaware corporation whose principal place of business is situated in Louisiana. The amount in controversy herein exceeds $10,000, exclusive of interest and costs.

On the basis of the foregoing facts, Wessely is entitled to judgment as a matter of law for the relief prayed for in its Complaint, for the following reasons:

1. This action arises under the Natural Gas Act, 52 Stat. 821–833, 15 U.S.C., Sections 717–717w, an Act of Congress regulating commerce, and this Court has jurisdiction thereof pursuant to 28 U.S.C., Sections 1331 and 1337, and pursuant to Section 22 of the Natural Gas Act, 52 Stat. 835, 15 U.S.C., Section 717u. This action also is between citizens of different states and the amount in controversy exceeds $10,000 exclusive of interest and costs and accordingly jurisdiction also is founded on 28 U.S.C., Section 1332.

2. The facts hereinabove found by the Court and the legal position of the parties hereto present an actual controversy within the scope of the Federal Declaratory Judgment Act, 28 U.S.C., Section 2201, and this Court is authorized and obligated to enter a judgment thereunder.

3. The claims, denials and legal positions of the defendants constitute claims which are adverse to plaintiff Wessely's oil and gas leasehold estate in the Southeast Quarter of Section 24, Township 16 North, Range 13 West, Blaine County, Oklahoma, and constitute a cloud on Wessely's title to said oil and gas leasehold estate and impair Wessely's use and enjoyment thereof.

4. The doctrine of primary jurisdiction does not, under the facts of this case, require that this matter be submitted first for decision to the Federal Power Commission, nor does it require that the Court either dismiss this cause or defer action thereon.

5. The doctrine of exhaustion of administrative remedies does not, under the facts of this case, require this Court to dismiss this cause or to defer action thereon.

6. The oil and gas leasehold estate acquired by the plaintiff Wessely by virtue of its lease hereinabove described, dated May 27, 1976, is not dedicated to delivery of any natural gas producible therefrom in interstate commerce, and plaintiff Wessely is not bound, contractually or otherwise, to deliver any natural gas producible from the said leasehold estate to defendant Arkla, for the following reasons:

A. First, setting aside any consideration of the rules of local property law, the Court addresses the issue of whether the Wessely Lease was dedicated by the acts of Aquitaine and Arkla to interstate use under the Natural Gas Act; for, if it was not, the defendants' claims that such Lease is subject to the Commission's

abandonment authority under Section 7(b) of the Natural Gas Act must fail. The scope of an independent producer's dedication of its property to interstate use under the Natural Gas Act is determined by the terms of the producer's contract for the sale of natural gas in interstate commerce. *Vreeland v. FPC*, 528 F.2d 1343 (5th Cir. 1976). The contract is to be construed according to ordinary principles of state contract law. *Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960). The dedication is completed by commencing deliveries in interstate commerce; thereafter, deliveries may not be discounted without the permission of the Commission under Section 7(b). *Atlantic Refining Co. v. Public Service Commission (CATCO)*, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959). Under the Gas Purchase Contract, the language of dedication is as follows:

". . . Seller hereby agrees to sell and deliver to Buyer, and Buyer agrees to purchase and receive from Seller, the natural gas production from all Contract Wells, and to that end Seller hereby subjects and commits hereto the Contract Leases as well as any other lease or leases now owned or hereafter acquired by Seller to the extent that lands covered by such other lease or leases be included within the production unit of a Contract Well."

" 'Contract Wells' refers to all wells now or hereafter completed as commercially productive of natural gas on lands covered by the Contract Lease or on a production unit which includes any part of said lands."

" 'Contract Leases' refers to all oil and gas leases and other mineral interests now owned and hereafter acquired (including any renewals of said leases) by Seller in the area delineated on plats attached hereto by Seller and made a part hereof as Exhibit 'A' said Exhibit 'A' being in nine parts, numbered 1 through 9."

Since the Aquitaine Lease was acquired by Aquitaine after the date of the Gas Purchase Contract, it was a lease ". . . hereafter acquired . . . by Seller . . ." within the million acre area shown on the plats attached to the Gas Purchase Contract, and was therefore covered by the Gas Purchase Contract. However, the Wessely Lease was not ". . . hereafter acquired . . . by Seller . . ." and was therefore not covered by the Aquitaine Contract. Indeed, under the foregoing language, Aquitaine did not even purport to dedicate any interest other than its own. We therefore conclude that the Wessely Lease was not within the scope of the dedication as determined under the Contract, and therefore the Wessely Lease is not dedicated to interstate use.

B. Second, assuming, for the sake of analysis, that Aquitaine did undertake to dedicate more than its interest under the Gas Purchase Contract, we do not construe the Natural Gas Act to permit such a dedication. Wayne A. Ivins, fee owner of the subject quarter section, created only a limited estate in W. B. Bryan by executing the oil and gas lease referred to above as the Aquitaine Lease. Such estate, an oil and gas leasehold estate, was limited to a primary term of five years from June 29, 1971, and so long thereafter as oil or gas was produced from said land by the lessee. By mesne assignment, Aquitaine became the owner of this limited estate, or a portion of it. When the limited estate expired of its own terms on June 29, 1976, all the oil and gas leasehold rights theretofore carved out of Ivins' fee interest reverted to Ivins. He then created another oil and gas leasehold estate in the premises which had never theretofore existed, by executing an oil and gas lease in favor of Fred R. Hirzel, Jr., who, in turn assigned the lease to Wessely. If Aquitaine, holder of an FPC Small Producer Certificate, purported to make an unqualified commitment of all gas ever produced by anyone at any time from the subject quarter section, that commitment is void as a

matter of law as to Ivins and his subsequent lessee thereto because Ivins' execution of the Aquitaine Lease created no right or capacity in the lessee under it to encumber or restrict anything other than that lessee's own oil and gas leasehold estate. Aquitaine lacked the power or capacity to commit to sale in interstate commerce gas which it did not own, i. e., gas produced from the premises at a time after Aquitaine's interest in the premises had ceased to exist. *Southland Royalty Co. v. Federal Power Commission,* 543 F.2d 1134 (5th Cir. 1976). *Cert. granted,* —— U.S. ——, 97 S.Ct. 2970, 53 L.Ed.2d 1091 (1977). This Court construes the Natural Gas Act as limiting the capacity of a party purporting to bring about a dedication of gas to interstate commerce to that of dedicating gas which he owns and as not extending to gas produced at a time after he ceases to own any interest in the premises. A contrary construction of the Act would render it unconstitutional because it would authorize the taking of the property of a stranger to the purported dedication without due process of law.

C. Third, defendants contend that commencement of deliveries to Arkla by Aquitaine from some other of the properties dedicated to the Contract operates to dedicate the Wessely Lease to Arkla in interstate commerce. The point is relevant only to the extent that the Commission's abandonment jurisdiction never attaches to *any* property unless deliveries are commenced in interstate commerce. (*See CATCO, supra.*) However, it is manifest that, in order for the Commission's abandonment jurisdiction to attach, a property must first have been dedicated to interstate use. Otherwise, there could be nothing to abandon. The Court previously has concluded that the Wessely Lease is *not* within the scope of the dedication to interstate use under the terms of the Contract. It is therefore unnecessary to reach the question of whether the commencement of deliveries from one

well or lease under the Contract affects the jurisdictional status of other wells or leases which *are* within the scope of the dedication under the Contract. However, defendants' point can be addressed on other grounds. No production has been obtained from the tract in question. The prohibition of Section 7(b) applies to ". . . facilities subject to the jurisdiction of the Commission or any service rendered by means of such facilities." Non-producing leases are not "facilities subject to the jurisdiction of the Commission" within the meaning of Section 7(b). *Federal Power Commission v. Panhandle Eastern Pipe Line Co.,* 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499 (1949). Therefore, commencement of deliveries by Aquitaine from certain leases under the Gas Purchase Contract did not operate to bring other non-producing leases, such as the Wessely and Aquitaine Leases, within Section 7(b). Furthermore, no "service" has been rendered from the tract in question for the reason that no deliveries have been commenced therefrom. These grounds distinguish the instant case from *Southland, supra,* where deliveries were being made in interstate commerce from the tract therein at issue on the date of the expiration of a 50 year term lease. Thus, whatever the ultimate disposition of *Southland* in the Supreme Court may be, the Court concludes that the result reached in the instant case is proper.

An appropriate Judgment will accordingly be entered herein.